[Cite as *State v. Berry*, 2012-Ohio-4660.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## DEFIANCE COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,            CASE NO.  4-12-04

      v.

SIDNEY A. BERRY,                      O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Defiance County Common Pleas Court
Trial Court No. 09 CR010610

Judgment Affirmed

Date of Decision:   October 9, 2012

APPEARANCES:

    *Terice A. Warncke*  for Appellant

    *Morris J. Murray and Russell R. Herman*  for Appellee

**SHAW, P.J.**

{¶1} Defendant-appellant Sidney A. Berry ("Berry") appeals the December 19, 2011, judgment of the Defiance County Common Pleas Court finding Berry in violation of Berry's community control and sentencing Berry to five years in prison. For the reasons that follow, we affirm the judgment of the trial court.

{¶2} On September 4, 2009, Berry was indicted for two counts of Intimidation of a Victim or Witness in a Criminal Case, in violation of R.C. 2921.04(B), both felonies of the third degree, and two counts of Aggravated Menacing, in violation of R.C. 2903.21(A), both misdemeanors of the first degree.

{¶3} After originally pleading not guilty, Berry later agreed to plead no contest to one count of Intimidation of a Victim or Witness in a Criminal Case, in exchange the State agreed to dismiss the remaining charges in this case and the charges in another pending criminal case against Berry.[1] The State further agreed to recommend that Berry be sentenced to community control.

{¶4} On April 19, 2010, the court held a change of plea hearing and went through a thorough Criminal Rule 11 colloquy with Berry. (Doc. 55). Ultimately the court accepted Berry's plea and found him guilty. (Doc. 20). The court then requested a pre-sentencing investigation and set the matter for sentencing. (*Id.*)

---

[1] The other "pending" criminal case against Berry is only mentioned in passing in the record. There are no specific documents pertaining to it contained within the record before us.

{¶5} On May 20, 2010, Berry filed a motion to withdraw his plea. (Doc. 21). On June 16, 2010, the court held a hearing on Berry's motion to withdraw his plea. Finding that Berry had essentially only changed his mind, the court denied Berry's motion. (Doc. 24).

{¶6} Subsequently on that same day, the court proceeded to sentence Berry. The court sentenced Berry to two years of community control in an entry that contained the following language:

> **Based upon all of the foregoing considerations and in consideration of all statutory sentencing factors, it is now therefore ORDERED, ADJUDGED and DECREED that for the offense of Intimidation of a Victim or Witness in a Criminal Case, a Felony of the Third Degree, in violation of Ohio Revised Code Section 2921.04(B), as charged in the [sic] Count One of the Indictment, the Court reserves a five (5) year basic prison term at the Ohio Department of Rehabilitation and Corrections at Orient, Ohio, in the event of a violation of Community Control; however, the Defendant is hereby Sentenced to Community Control Sanctions for a period of two (2) years under the Standard Terms and Conditions of Community Control as established by Rule of Court together with the following Special Condition * * *[.]**

(Doc. 24).

{¶7} On November 17, 2010, the State filed a motion to revoke Berry's community control claiming that Berry violated his curfew, Berry had not made any payments toward his financial obligations, and that Berry attempted to have contact with a person he was prohibited from contacting. (Doc. 25). On January 11, 2011, the State filed a supplemental motion to revoke Berry's community

control as Berry's whereabouts were unknown. (Doc. 23). On April 11, 2011, the State filed a third motion to revoke Berry's community control, adding to the other allegations that Berry had violated his community control by associating with a convicted felon, that Berry had been found possessing marijuana, and that Berry had been found outside of the state of Ohio without his supervising officer's permission. (Doc. 24-2).[2]

{¶8} On April 20, 2011, the court held a hearing to determine whether there was probable cause to find Berry had violated community control. After hearing testimony from Officer Thomas Sanford who had supervised Berry since June 16, 2010, the court determined there was probable cause. (Doc. 28).

{¶9} On May 19, 2011, the court held a hearing to determine whether Berry had, in fact, violated his community control. After hearing testimony that Berry, *inter alia*, left the county without permission, possessed marijuana, and had not paid on his fees the court determined Berry had violated his community control. (Doc. 59 at 7-13). However, although the court found that Berry violated his community control, the court chose not to send Berry to prison. The court chose instead to keep Berry on community control and require as an additional condition that Berry successfully complete a program called SEARCH.[3] (Doc. 29).

---

[2] This document in the record was mistakenly numbered Doc. 24, creating two document "24s".
[3] SEARCH "focuses on rehabilitating male convicted felons who suffer from substance abuse issues with various programming and teaching of positive life choices and skills, etc." (Appt. Br. at 1).

{¶10} On June 17, 2011, Berry entered the SEARCH program. On October 7, 2011, Berry was terminated unsuccessfully from the SEARCH program.

{¶11} On October 18, 2011, the State filed a motion to revoke Berry's community control, arguing that Berry did not complete the SEARCH program as required by the new condition of his community control.

{¶12} On October 19, 2011, the court held a hearing to determine whether there was probable cause to terminate Berry's community control. After hearing testimony that Berry was terminated from the SEARCH program, the court found that there was probable cause.

{¶13} On December 15, 2011, the court held a hearing to determine whether Berry had violated his community control. At the hearing, the State called Officer Sanford, and Officer Sanford identified a termination summary that he received showing that Berry had not successfully completed the SEARCH program as required. (State's Ex. 1).

{¶14} The State next called Patrick Davis, a case manager from Northwest Community Corrections Center. (Doc. 61 at 12). Berry was part of Davis' caseload during the time Berry was in the SEARCH program. (*Id.*) Davis testified that Berry had behavioral problems while in the SEARCH program and had been sanctioned 17 times for his behavior. (*Id.* at 29). Davis testified that shortly before Berry was terminated from the program, Berry refused to participate

in anything, and refused to sign a behavioral contract that would hold Berry accountable for his behavior. (*Id*. at 19-20). One of the exhibits the State entered into evidence contained a summary illustrating that for essentially an entire day Berry stayed in his bed, would not speak to or acknowledge the staff, would not eat, would not take his medication, would not sign the behavioral contract, and would not relinquish his radio. (State's Ex. 1). At that point Berry was not only failing to comply with instructions, he was also completely failing to participate in SEARCH. Davis stated that SEARCH gave Berry second and third chances before removing Berry from the program. (*Id*. at 40). Ultimately, Davis testified that Berry was terminated unsuccessfully from the program.

{¶15} In his defense, Berry called several other people that had been in the SEARCH program with him. Berry's witnesses testified that Berry was trying to get better. Berry then testified himself, arguing that he was being treated unfairly and that his infractions in the SEARCH program were minor and non-violent.

{¶16} After hearing all of the testimony, the court determined that Berry had violated his community control. The court then revoked Berry's community control and imposed the five year prison sentence. This was memorialized in a judgment entry filed December 19, 2011. (Doc. 39).

{¶17} It is from this judgment that Berry appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR 1**
**THE COURT VIOLATED OHIO FELONY SENTENCING STATUTES BY INITIALLY SENTENCING SIDNEY BERRY TO BOTH PRISON AND COMMUNITY CONTROL.**

**ASSIGNMENT OF ERROR 2**
**THE COURT ABUSED ITS DISCRETION IN REVOKING MR. BERRY'S COMMUNITY CONTROL.**

*First Assignment of Error*

{¶18} In Berry's first assignment of error, Berry argues that the trial court erred by improperly sentencing Berry to both prison *and* community control. Specifically, Berry argues that the trial court imposed a "reserved" prison term *and* community control at sentencing and Berry argues that such a sentence is improper pursuant to our recent decision in *State v. Hartman*, 3d Dist. No. 15-10-11, 2012-Ohio-874.

{¶19} An appellate court must conduct a meaningful review of the trial court's sentencing decision. *State v. Daughenbaugh*, 3d Dist. No. 16-07-07, 2007-Ohio-5774, ¶ 8, citing *State v. Carter*, 11th Dist. No.2003-P-0007, 2004-Ohio-1181. A meaningful review means "that an appellate court hearing an appeal of a felony sentence may modify or vacate the sentence and remand the matter to the trial court for re-sentencing if the court clearly and convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law." *Daughenbaugh* at ¶ 8, citing *Carter* at ¶ 44; R.C. 2953.08(G)(2).

{¶20} In 1996, new sentencing statutes contained in Am. Sub.S.B. No.2 ("S.B.2") took effect, which *inter alia*, prohibit a trial court from imposing both a prison sentence and community control sanctions on the same offense. *State v. Vlad*, 153 Ohio App.3d 74, 78, 2003-Ohio-2930 (7th Dist.); *State v. Hoy*, 3d Dist. Nos. 14-04-13, 14-04-14, 2005-Ohio-1093, ¶ 18. As we have explained:

> **[p]rior to S.B. 2, it was a regular practice in felony sentencing to impose a prison sentence and then suspend the sentence and grant probation with specific terms and conditions. That option was removed by the felony sentencing statutes adopted as part of S.B. 2.**

*Hoy* at ¶ 18.

{¶21} This district has determined that "there is no provision in the sentencing statute which permits a court to suspend a prison term or make community control a condition of a suspended prison term." *State v. Riley,* 3d Dist. No. 14–98–38 (Nov. 12, 1998). Rather, current felony sentencing statutes, contained primarily in R.C. 2929.11 to 2929.19, require trial courts to impose either a prison term or community control sanctions on each count. *State v. Williams*, 3d Dist. No. 5-10-02, 2011-Ohio-995, ¶ 17 citing *Hoy*. Pursuant to R.C. 2929.19(B), community control sanctions and prison terms are mutually exclusive and cannot be imposed at the same time on the same count of conviction. *State v. Randolph*, 12th Dist. No. CA2003-10-262, 2004-Ohio-3350, ¶ 9. Because community control sanctions are directly imposed and do not follow as a

consequence of a suspended prison sentence, trial courts must decide which sentence is most appropriate and impose whichever option is deemed to be necessary. *Vlad* at ¶ 16.

**{¶22}** Revised Code 2929.19(B)(4), the statutory provision governing sentencing of community control sanctions reads as follows:

> **(4) If the sentencing court determines at the sentencing hearing that a community control sanction should be imposed and the court is not prohibited from imposing a community control sanction, the court shall impose a community control sanction. The court shall notify the offender that, if the conditions of the sanction are violated, if the offender commits a violation of any law, or if the offender leaves this state without the permission of the court or the offender's probation officer, the court may impose a longer time under the same sanction, may impose a more restrictive sanction, or may impose a prison term on the offender and shall indicate the specific prison term that may be imposed as a sanction for the violation, as selected by the court from the range of prison terms for the offense pursuant to section 2929.14 of the Revised Code.**

R.C. 2929.19(B)(4).

**{¶23}** It is necessary to begin our analysis of the trial court's sentencing entry in this case by clarifying our holding in *Hartman*, the case Berry relies on to argue that his sentence was improper, so as to prevent further confusion on this topic in the future. In *Hartman*, we found that the defendant's sentence was improper as the trial court *sentenced* the defendant to both prison *and* community control. In the trial court's sentencing entry in *Hartman*, the trial court explicitly sentenced the defendant to four years of incarceration on each of five counts. The

trial court actually used the language "the Defendant is hereby sentenced as follows" and then stated the prison term for each count. *Hartman*, 2012-Ohio-874, at ¶ 2. The trial court continued in its next paragraph in the sentencing entry to "reserve" or, essentially, suspend the prison sentences on four of the five counts. *Id*. In the third paragraph, the trial court then sentenced the defendant to community control. *Id*.

**{¶24}** What compelled us to reverse in *Hartman* was the fact that the trial court had simultaneously sentenced the defendant to both prison and community control and attempted to reconcile this by reserving, or effectively, suspending, the original prison sentence. Our holding in *Hartman* (and the cases that came before it) was thus that a trial court could not explicitly *sentence* a defendant to prison and community control.

**{¶25}** The purpose of the community control statute cited above is not to *sentence* a defendant to a specific prison term and then suspend or reserve that prison term, the purpose is to *notify* a defendant of a specific prison term that a defendant will receive *if* he violates community control. The key is that a defendant must be *notified* of the prison sentence the defendant would receive if the defendant violated his community control, not *sentenced* to that prison term.

**{¶26}** In the case *sub judice*, Berry argues that the trial court's usage of the word "reserved" regarding his prison sentence is an error. Berry claims that

pursuant to our holding in *Hartman*, by the trial court using the word "reserved" Berry had been effectively sentenced to prison and community control making his sentence improper. The trial court's entry reads:

> **Based upon all of the foregoing considerations and in consideration of all statutory sentencing factors, it is now therefore ORDERED, ADJUDGED and DECREED that for the offense of Intimidation of a Victim or Witness in a Criminal Case, a Felony of the Third Degree, in violation of Ohio Revised Code Section 2921.04(B), as charged in the [sic] Count One of the Indictment,** *the Court reserves a five (5) year basic prison term at the Ohio Department of Rehabilitation and Corrections at Orient, Ohio, in the event of a violation of Community Control; however, the Defendant is hereby Sentenced to Community Control Sanctions for a period of two (2) years under the Standard Terms and Conditions of Community Control as established by Rule of Court together with the following Special Condition \* \* \*[.]*

(Doc. 24) (Emphasis Added.).

{¶27} As can be seen from a plain reading of the italicized portion of the entry cited above, the court never explicitly sentences or imposes the five year prison term on Berry as it did in *Hartman* or the cases we relied upon in *Hartman*. On the contrary, the court only sentences Berry to community control. Berry is not sentenced in any way to a prison term. The statement by the court in its entry merely notifies Berry of the potential prison term he would receive if he violated community control—the specific prison term is not imposed and then suspended as it was in *Hartman, Vlad, Hoy,* or *Williams*, *supra*.

**{¶28}** While there may exist some potential for confusion in the use of the term "reserved," we note that several appellate districts have found or implied that the use of the word "reserve" is permissible when notifying a defendant of a prison term he or she would receive upon violating a community control sanction. *State v. Barnes*, 6th Dist. No. F-06-005, 2007-Ohio-1610, ¶ 8; *See State v. Grodhuas*, 4th Dist. No. 00CA40, 2001-Ohio-2511 (where court used the term "reserve" in contemplation of a prison term for a community control violation); *See State v. Honchell*, 12th Dist. No. CA2003-10-085, 2004-Ohio-3014, ¶ 10 (where the court reversed for not specifying a specific prison term associated with community control but used the term "reserved" when discussing the prison term implying that "reserve" was an appropriate term).

**{¶29}** Our own court has found this as well in the past, and we clarify now that *Hartman* does not stand for the principle that using the term "reserved" creates an error in sentencing. *See State v. Marvin*, 3d Dist. Nos. 14-98-54, 14-98-59, 1999-Ohio-811 (wherein implying that using the term reserved is not only permissible but appropriate). Moreover, in his brief, Berry points us to no case law that would stand for the specific proposition that using the word "reserved" regarding a prison sentence was inappropriate without also having the error as exhibited under *Hartman* of simultaneous sentences to prison and community control.

**{¶30}** Here, unlike in *Hartman*, Berry was not *sentenced* to a prison term and community control. He was specifically sentenced to community control and notified, that if he violated community control he would be facing five years in prison. Therefore, we find no error in Berry's sentence under our previous holding in *Hartman*.

**{¶31}** Accordingly, Berry's first assignment error is overruled.

*Second Assignment of Error*

**{¶32}** In Berry's second assignment of error, he argues that the trial court abused its discretion in revoking his community control. Specifically Berry argues that he substantially complied and nearly completed his two-year community control, and that the trial court's decision was not factually supported by the record.

**{¶33}** The decision of a trial court finding a violation of community control will not be disturbed absent an abuse of discretion. *State v. Ryan*, 3d Dist. No. 14-06-55, 2007-Ohio-4743 at ¶ 7. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Id*.

{¶34} Berry argues that his community control was revoked unjustly after Berry had substantially complied with the SEARCH program and had nearly completed the two years of his community control. However, despite Berry's arguments about being unfairly treated and improperly dismissed from community control, Berry's unsuccessful termination from SEARCH was a second adjudicated violation of Berry's community control.

{¶35} For the first set of violations the State filed multiple motions to revoke Berry's community control for a variety of reasons which included Berry being charged with another crime, namely drug possession, Berry leaving the state without permission, Berry's whereabouts being unknown, etc. For the second violation, the State alleged that Berry did not complete the SEARCH program as was required by the court following Berry's last community control violation.

{¶36} Before the court sent Berry to the SEARCH program, the court informed Berry that Berry probably would not like SEARCH because the rules were strict. (Doc. 59 at 38-39). Still, Berry was sent to the SEARCH program and told he needed to successfully complete SEARCH and Berry failed to do so. There is no dispute in the record that Berry was unsuccessfully terminated from the SEARCH program as required under the terms of his community control.

{¶37} Berry does argue that he was improperly dismissed from the SEARCH program, but the record contains evidence that would support Berry's

-14-

dismissal including Berry having 17 sanctions for poor behavior. (Doc. 61 at 29). Moreover, the record contains evidence that at one point, Berry essentially shut down and would not sign a behavioral contract to hold him accountable for his actions, would not speak to staff members, would not eat or take meals, would not relinquish his radio, and would not acknowledge the presence of staff members. (State's Exs. 1-2). Only after Berry completely refused to participate did the staff terminate Berry from the program. It is hard to see how the staff had any other option aside from terminating Berry from the program when Berry would not speak to or acknowledge the staff as they attempted to give him yet another chance through a behavioral contract.

{¶38} Ultimately we cannot find under these circumstances that the court in any way abused its discretion in terminating Berry's community control. Berry had a variety of violations that resulted in not one but two findings that Berry had violated his community control. Accordingly, Berry's second assignment of error is overruled.

{¶39} For the foregoing reasons Berry's assignments of error are overruled and the judgment of the Defiance County Common Pleas Court is affirmed.

***Judgment Affirmed***

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**